**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FLORENCE MUSSAT, M.D., S.C., an Illinois Corporation, individually and on behalf on behalf of similarly situated persons, )))) | |
| ) | 13-cv-7853 |
| Plaintiff, ) | |
| ) | Hon. Sharon Johnson Coleman |
| v. ) | |
| ) | |
| POWER LIENS LLC, ) | |
| ) | |
| Defendant. ) | |

**AMENDED COMPLAINT - CLASS ACTION**

**INTRODUCTION**

1. Plaintiff Florence Mussat, M.D., S.C., an Illinois Corporation, brings this action to secure monetary and injunctive redress for the illegal actions of Power Liens LLC ("Defendant" or "Power Lien") in faxing an unsolicited advertisements that do not contain the required opt-out notice in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and the Illinois Consumer Fraud and Deceptive Business Act, 815 ILCS 505/2 ("ICFA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question) and 47 U.S.C. § 227 ("TCPA"). *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (2012); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir. 2005).

3. Venue and personal jurisdiction in this District are proper because Defendant committed tortious acts in Illinois by the transmission of unlawful communications within the state, specifically targeting their advertising to Plaintiff.

**PARTIES**

4. Plaintiff Florence Mussat, M.D., S.C., is an Illinois Corporation with offices in the Chicago metropolitan area that at all times relevant to the Complaint maintained a telephone facsimile machine corresponding with the telephone number (773) 868-3700.

5. According to the Nevada Secretary of State, Power Liens LLC, is a Nevada Limited Liability Company and its registered agent is Paracorp Incorporated, 318 N. Carson St. #208, Carson City, NV 89701.

**FACTS**

6. On or around October 18, 2012, Plaintiff received the unsolicited fax advertisement attached as Exhibit A on its facsimile machine.

7. Defendant is responsible for causing to be sent and/or the sending of the fax, a copy of which is attached hereto as Exhibit A.

8. The sender of the fax attached hereto as Exhibit A intended the fax to be sent to a fax machine that could reach Plaintiff.

9. Defendant is the entity whose products or services were advertised in the fax advertisement attached as Exhibit A.

10. The subject form fax, Exhibit A, is an advertisement requesting Plaintiff to contact Defendant related to Defendant's business.

11. Specifically the advertisement states, "For information on how to secure an exclusive zone in your territory and locking out your nearby competition, contact us today at 800-680-5526."

12. This language promotes the availability and quality of Defendant's

services.

13. The subject form fax, Exhibit A, is also part of a marketing campaign to attract physicians to Defendant's website to attempt to sign up physicians to become part of Defendant's preferred listings and in return Defendant will then collect a monthly fee from the physician for Defendant's services.

14. According to Defendant's website:

> Qualified doctors can apply to become a Preferred Provider and receive a number of benefits including exclusivity, highlighting on PowerLiens.com, periodic press releases for your practice, exclusive Preferred Provider seal for your website and office, highest recommendation from Power Liens staff and marketing representatives, and more. Becoming a Preferred Provider is a thorough process and is not for everyone. To find out how to apply, email info@powerliens.com or call us directly at (800) 680-5526.
>
> http://powerliens.com/pages/for-doctors/ (last visited January 23, 2014).

15. Plaintiff does not recognize Defendant and does not have or ever had a business relationship with Defendant.

16. Plaintiff did not authorize the sending of the form fax advertisement, Exhibit A, to it.

17. On information and belief, Defendant has transmitted by fax the form of Exhibit A, which in part requests the recipient to contact 800-680-5526 or fax the filled out form back to 310-882-56512 to at least 40 other persons or businesses.

18. There are no reasonable means for Plaintiff or other recipients of Defendant's unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners, especially those in he medical community to whom Defendant's solicitation is targeting.

19. Furthermore no "opt out notice" as required by the TCPA, even when faxes are sent with consent or pursuant to an established business relationship, was provided in the faxes the form of is attached as <u>Exhibit A</u>.

**COUNT I – TCPA**

20. Plaintiff incorporates ¶¶ 1-19 above.

21. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine . . . ." 47 U.S.C. §227(b)(1)(C).

22. <u>Exhibit A</u> is material advertising the commercial availability or quality of goods or services.

23. <u>Exhibit A</u> was sent without Plaintiff's prior express invitations or permission, in writing or otherwise.

24. 47 U.S.C. § 227(b)(2) gives the Federal Communications Commission the authority to issue regulations implementing the TCPA.

25. 47 C.F.R. § 64.1200 (a) (4) (iv) provides:

A facsimile advertisement that is sent to a recipient that has provided express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a) (4) (iii) of this section.

26. 47 C.F.R. § 64.1200 (a) (4) (iii) provides:

The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if--
(A) The notice is clear and conspicuous and on the first page of the advertisement;
(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a) (4) (v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a) (4) (v) of this section;
(D) The notice includes--
   (1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and
   (2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or e-mail address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and
(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

27. <u>Exhibit A</u> does not contain an opt-out notice compliant with 47 C.F.R. § 64.1200 (a) (4) (iii).

28. The TCPA, 47 U.S.C. §227(b)(3), provides:

Private right of action.

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–
   (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
   (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
   (C) both such actions.
   If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

29. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, Plaintiff's and each class member's statutory right of privacy was invaded.

30. Plaintiff and each class member are entitled to statutory damages.

31. Defendant violated the TCPA even if its actions were only negligent.

32. Defendant should be enjoined from sending unsolicited faxes in the future.

## TCPA - CLASS ALLEGATIONS

33. Plaintiff brings this claim on behalf of a class and subclass under the Rule 23(b)(3) and Rule 23(b)(2) consisting of:

CLASS: All persons who received at least one fax in the form of <u>Exhibit A</u> that lacked an opt-out notice, from October 1, 2012, to October 31, 2012.

SUBCLASS: All persons who received at least one fax in the form of <u>Exhibit A</u> where Defendant's records do not show that it had any prior express permission or invitation for the sending of such fax or did not have an established business relationship from a time period from October 1, 2012, to October 31, 2012.

34. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the classes and subclass above.

35. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether Defendant engaged in a pattern of sending unsolicited faxes;

    b. The manner in which Defendant compiled or obtained its list of recipients; and

    c. Whether Defendant thereby violated the TCPA.

36. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving

unlawful business practices.

38. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendant are small because it is not economically feasible to bring individual actions.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendant for:

    a. Statutory damages under the TCPA;

    b. An injunction against the further transmission of unsolicited faxes;

    c. Costs of suit;

    d. Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

38. Plaintiff incorporates ¶¶ 1-19 above.

39. Defendant engaged in unfair acts and practices, in violation of ICFA § 2/815 ILCS 505/2, by sending unsolicited fax advertising to Plaintiff and others.

40. Unsolicited fax advertising is contrary to Illinois public policy, as set forth in 720 ILCS 5/26-3(b), which makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

41. Defendant engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of its advertising.

42. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner that was required to print the fax in the form of <u>Exhibit A</u>.

43.     Plaintiff and the class members are left with a lack of meaningful choice because there was no remedy from the harm experienced from the receipt of the fax in form of Exhibit A as Plaintiff, and presumably other doctors, need to keep their fax machines on for business purposes.

44.     While the loss may be small to Plaintiff, in the aggregate to the class, the harm caused by Defendant is more than *de minimus*.

45.     Defendant engaged in such conduct in the course of trade and commerce.

46.     Defendant's conduct caused recipients of their advertising to bear the cost thereof. This gave Defendant an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost approximately $500,000 if sent by U.S. mail but only approximately $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

### ILLINOIS CONSUMER FRAUD ACT – CLASS ALLEGATIONS

47.     Plaintiff brings this claim on behalf of a class and subclass under the Rule 23(b)(3) consisting of:

CLASS: All persons with a fax machine corresponding to an Illinois area code who between October 31, 2010 and October 31, 2013, received a fax in the form of Exhibit A that did not contain an opt-out notice.

SUBCLASS: All persons with a fax machine corresponding to an Illinois area

code who between October 31, 2010 and October 31, 2013, received a fax in the form of Exhibit A with respect to whom Defendant did not have prior express consent or invitation from the recipient prior to sending the fax or with whom Defendant did not have a prior established business relationship.

48. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

49. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether Defendant engaged in a pattern of sending unsolicited faxes;

    b. Defendant engaged in unfair acts; and

    c. Whether Defendant violated the ICFA.

50. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.

51. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because it is not economically feasible to bring individual actions.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendant for:

      a. Injunctive relief under 815 ILCS 505/10a(c);

      b. Defendant to pay and provide notice to the class;

      c. Attorney's fess, litigation costs, and costs of suit; and

      d. Such other or further relief as the Court deems just and proper.

      Respectfully submitted,

      s/ Curtis C. Warner
        Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
1400 E. Touhy Ave., Ste. 260
Des Plaines, IL 60018
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com


## NOTICE OF LIEN AND ASSIGNMENT OF ATTORNEY'S FEES

PLEASE TAKE NOTICE that Plaintiff has irrevocably assigned its rights to attorney's fees to her undersigned counsel who has taken a lien on such fees.

      Respectfully submitted,

      s/ Curtis C. Warner
        Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
1400 E. Touhy Ave., Ste. 260
Des Plaines, IL 60018
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com

## CERTIFICATE OF SERVICE

I, Curtis C. Warner, hereby certify that on **January 23, 2014,** I filed the **Amended Complaint above** using the Court's CM/ECF system, which automatically will send notice to those parties who have appeared and are so registered.

        Respectfully submitted,

        s/ Curtis C. Warner
           Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
1400 E. Touhy, Ste. 260
Des Plaines, IL 60018
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com