IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FLORENCE MUSSAT, M.D., S.C., an Illinois Corporation, individually and on behalf on behalf of similarly situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) | 13-cv-7853 |
| v. | ) ) | Hon. Sharon Johnson Coleman |
| POWER LIENS LLC; and PEJMAN J. JAVAHERI, | ) ) ) | |
| Defendants. | ) ) | |

**SECOND AMENDED COMPLAINT - CLASS ACTION**

**INTRODUCTION**

1. Plaintiff Florence Mussat, M.D., S.C., an Illinois Corporation, brings this action to secure monetary and injunctive redress for the illegal actions of Power Liens LLC ("Power Liens") and Pejman J. Javaheri ("Mr. Javaheri") collectively ("Defendants") in faxing and causing to be faxed unsolicited advertisements to doctors informing them, "For information on how to secure an exclusive zone in your territory and locking out your nearby competition, contact us today at 800-680-5527.", that also do not contain the required opt-out notice in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and the Illinois Consumer Fraud and Deceptive Business Act, 815 ILCS 505/2 ("ICFA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question) and 47 U.S.C. § 227 ("TCPA"). *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740

(2012); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir. 2005).

3. Venue and personal jurisdiction in this District are proper because Defendants committed tortious acts in Illinois by the transmission of unlawful communications within the state, specifically targeting their advertising to Plaintiff.

**PARTIES**

4. Plaintiff Florence Mussat, M.D., S.C., is an Illinois Corporation with offices in the Chicago metropolitan area that maintained a telephone facsimile machine corresponding with the telephone number (773) 868-3700.

5. According to the Nevada Secretary of State, Power Liens LLC, is a Nevada Limited Liability Company that filed on or around May 8, 2012.

6. Power Liens operates in California, Arizona, Florida and Illinois.

7. Power Liens' website, in part, promotes Mr. Javaheri as an attorney and his credentials.

8. Mr. Javaheri is the co-founder of Power Liens.

9. Mr. Javaheri is a co-owner of Power Liens.

10. Power Liens shared an office with one of Mr. Javaheri's law firms, JURIS Law Group, at 10215 Santa Monica Boulevard, Century City, California.

11. At all times relevant to the Second Amended Complaint, Mr. Javaheri was the person responsible for the day-to-day operations of Power Liens.

12. At all times relevant to the Second Amended Complaint, Mr. Javaheri was involved with and approved of the marketing plan of Power Liens, which included sending faxes to doctors.

13. At all times relevant to the Second Amended Complaint, Mr. Jahaheri was

the final authority at Power Liens in deciding what faxes where sent to doctors.

14. At all times relevant to the Second Amended Complaint, Mr. Javaheri had direct personal involvement in and ultimate control over every aspect of Power Liens' wrongful conduct.

**FACTS**

15. On or around October 18, 2012, Plaintiff received a fax from Power Liens, a copy of which is attached as Exhibit A.

16. On or around October 18, 2012, Power Liens sent Plaintiff a fax, a copy of which is attached as Exhibit A.

17. On or around December 8, 2012, Plaintiff received a fax from Power Liens, a copy of which is attached hereto as Exhibit B.

18. On or around December 8, 2012, Power Liens sent Plaintiff a fax, a copy of which is attached hereto as Exhibit B.

19. Defendants are responsible for creating and causing to be sent the original faxes, a copy of each is attached hereto as Exhibit A and Exhibit B.

20. The sender of each fax, a copy of which is attached hereto as Exhibit A and Exhibit B, intended each fax to be received by Plaintiff.

21. Power Liens is the entity whose products or services were advertised in each fax, a copy of which is attached as Exhibit A and Exhibit B.

22. Each fax, a copy of which is attached hereto as Exhibit A and Exhibit B, is an advertisement requesting the reader to contact Defendant related to Defendant's business.

23. Specifically each fax, a copy of which is attached hereto as Exhibit A and

3

Exhibit B, in part states, "For information on how to secure an exclusive zone in your territory and locking out your nearby competition, contact us today at 800-680-5526."

24. This language quoted above in paragraph 23 above promotes the availability and quality of Power Liens' services.

25. The language quoted above in paragraph 23 is an invitation to doctors to be provided the opportunity to get an exclusive territory on the Power Liens' website where no other doctors would show up in that doctor's territory when a search was conducted on Power Liens' website.

26. Those doctors who call and contract with Power Liens to secure an exclusive zone and lock out their competition pay a fee to Power Liens for this service.

27. The service to lock out the doctors' competition is known as the Preferred Provider.

28. In order for a doctor to be a Preferred Provider on Power Lien's website, the doctor must pay Power Liens money.

29. The originals of Exhibit A and Exhibit B were part of a marketing campaign to attract physicians to Power Liens' website or to call Power Liens in an attempt to sign up physicians to become a Preferred Provider.

30. According to Power Liens' website:

> Qualified doctors can apply to become a Preferred Provider and receive a number of benefits including exclusivity, highlighting on PowerLiens.com, periodic press releases for your practice, exclusive Preferred Provider seal for your website and office, highest recommendation from Power Liens staff and marketing representatives, and more. Becoming a Preferred Provider is a thorough process and is not for everyone. To find out how to apply, email info@powerliens.com or call us directly at (800) 680-5526.
>
> http://powerliens.com/pages/for-doctors/ (last visited January 23, 2014).

31. Plaintiff does not recognize Power Liens and does not have nor ever had a business relationship with Power Liens.

32. Plaintiff does not recognize Mr. Javaheri and does not have nor ever had a business relationship with Mr. Javaheri.

33. Plaintiff did not authorize the sending of the original fax, a copy of which is attached hereto as Exhibit A, to it.

34. Plaintiff did not authorize the sending of the original fax, a copy of which is attached hereto as Exhibit B, to it.

35. On information and belief, Power Liens transmitted a fax that stated, "For information on how to secure an exclusive zone in your territory and locking out your nearby competition, contact us today at 800-680-5526" to at least 40 other persons or businesses in total during a time period from May 8, 2012 to November 12, 2013.

36. There are no reasonable means for Plaintiff or other recipients of Defendants' faxes to avoid receiving a fax from Power Liens. Fax machines must be left on and ready to receive the urgent communications authorized by their owners, especially those in the medical community to whom Defendants' faxes were sent to.

37. Furthermore no "opt out notice" as required by the TCPA, even when faxes are sent with consent or pursuant to an established business relationship, was provided in the original form faxes, copies of which are attached as Exhibit A  Exhibit B.

### COUNT I – TCPA

38. Plaintiff incorporates ¶¶ 1-37 above.

39. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile

machine . . . ." 47 U.S.C. §227(b)(1)(C).

40. The original fax, a copy of which is attached as <u>Exhibit A</u> advertises the commercial availability or quality of goods or services of Power Liens.

41. <u>Exhibit A</u> was sent without Plaintiff's prior express invitation or permission, in writing or otherwise.

42. The original fax, a copy of which is attached as <u>Exhibit B</u> advertises the commercial availability or quality of goods or services of Power Liens.

43. <u>Exhibit B</u> was sent without Plaintiff's prior express invitation or permission, in writing or otherwise.

44. 47 U.S.C. § 227(b)(2) gives the Federal Communications Commission the authority to issue regulations implementing the TCPA.

45. 47 C.F.R. § 64.1200 (a) (4) (iv) provides:

A facsimile advertisement that is sent to a recipient that has provided express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a) (4) (iii) of this section.

46. 47 C.F.R. § 64.1200 (a) (4) (iii) provides:

The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if--
(A) The notice is clear and conspicuous and on the first page of the advertisement;
(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a) (4) (v) of this section is unlawful;
(C) The notice sets forth the requirements for an opt-out request under paragraph (a) (4) (v) of this section;
(D) The notice includes--
    (1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and
    (2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a

6

> Web site address or e-mail address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

47. The original fax, a copy of which is attached as <u>Exhibit A</u> does not contain an opt-out notice compliant with 47 C.F.R. § 64.1200 (a) (4) (iii).

48. The original fax, a copy of which is attached as <u>Exhibit B</u> does not contain an opt-out notice compliant with 47 C.F.R. § 64.1200 (a) (4) (iii).

49. The TCPA, 47 U.S.C. §227(b)(3), provides:

Private right of action.

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–
 (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
 (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
 (C) both such actions.
 If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

50. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, Plaintiff's and each class member's statutory right of privacy was invaded.

51. Plaintiff and each class member are entitled to statutory damages.

52. Defendants violated the TCPA even if their actions were only negligent.

53. Defendants should be enjoined from sending unsolicited faxes in the

future.

## TCPA - CLASS ALLEGATIONS

54. Plaintiff brings this claim on behalf of a class and subclass under the Rule 23(b)(3) and Rule 23(b)(2) consisting of:

CLASS: All persons who received at least one fax from Power Liens from May 8, 2012 to November 12, 2013, in which the fax stated, "For information on how to secure an exclusive zone in your territory and locking out your nearby competition, contact us today at 800-680-5526." that lacked an opt-out notice. Excluded from this class are any persons who are a Power Liens Preferred Provider.

SUBCLASS: All persons who received at least one fax from Power Liens from May 8, 2012 to November 12, 2013, in which the fax stated, "For information on how to secure an exclusive zone in your territory and locking out your nearby competition, contact us today at 800-680-5526." Excluded from this subclass are any persons who are a Power Liens Preferred Provider.

55. Each class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the classes and subclass above.

56. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether Defendants engaged in a pattern of sending unsolicited faxes;

    b. The manner in which Defendants compiled or obtained its list of

8

recipients; and

c. Whether Defendants thereby violated the TCPA.

57. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.

58. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants are small because it is not economically feasible to bring individual actions.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

a. Statutory damages under the TCPA;

b. An injunction against the further transmission of unsolicited faxes;

c. Costs of suit;

d. Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

59. Plaintiff incorporates ¶¶ 1-37 above.

60. Defendants engaged in unfair acts and practices, in violation of ICFA § 2/815 ILCS 505/2, by sending or causing to be sent unsolicited fax advertising to Plaintiff and others.

61. Unsolicited fax advertising is contrary to Illinois public policy, as set forth in 720 ILCS 5/26-3(b), which makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

9

62. Defendants engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of its advertising.

63. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner that was required to print faxes from Power Liens, a copy of which for example are attached hereto as Exhibit A and Exhibit B.

64. Plaintiff and the class members are left with a lack of meaningful choice because there was no remedy from the harm experienced from the receipt of a fax, for example copies of which are attached hereto as Exhibit A and Exhibit B, as Plaintiff, and other doctors, need to keep their fax machines on for business purposes.

65. While the loss may be small to Plaintiff, in the aggregate to the class, the harm caused by Defendants is more than *de minimus*.

66. Defendants engaged in such conduct in the course of trade and commerce.

67. Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave Power Liens an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost approximately $500,000 if sent by U.S. mail but only approximately $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

**ILLINOIS CONSUMER FRAUD ACT – CLASS ALLEGATIONS**

68. Plaintiff brings this claim on behalf of a class and subclass under the Rule 23(b)(3) consisting of:

CLASS: All persons with a fax number with an Illinois area code who received at least one fax from Power Liens from May 8, 2012 to November 12, 2013, in which the fax stated, "For information on how to secure an exclusive zone in your territory and locking out your nearby competition, contact us today at 800-680-5526" that lacked an opt-out notice. Excluded from this class are any persons who are a Power Liens Preferred Provider.

69. SUBCLASS: All persons with a fax number with an Illinois area code, who received at least one fax from Power Liens from May 8, 2012 to November 12, 2013, in which the fax stated, "For information on how to secure an exclusive zone in your territory and locking out your nearby competition, contact us today at 800-680-5526" Excluded from this subclass are any persons who are a Power Liens Preferred Provider.

70. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class and subclass above.

71. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a.    Whether Defendants engaged in a pattern of sending unsolicited faxes;

      b.      Defendants engaged in unfair acts; and

      c.      Whether Defendants violated the ICFA.

72.    Plaintiff will fairly and adequately protect the interests of the class and subclass. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.

73.    A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants are small because it is not economically feasible to bring individual actions.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

      a.  Injunctive relief under 815 ILCS 505/10a(c);

      b.  Defendants to pay and provide notice to the class if required;

      c.  Attorney's fess, litigation costs, and costs of suit; and

      d.  Such other or further relief as the Court deems just and proper.

                                Respectfully submitted,

                                  s/ Curtis C. Warner
                                    Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
350 S. Northwest HWY, Ste. 300
Park Ridge, IL 60068
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com